UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
ACTION NO. 1:22-CV-00122

LONNIE ALLEN HARRIS                                                                     PLAINTIFF

v.

CALEB WESLEY, *et al*                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lonnie Allen Harris, filed this *pro se* action pursuant to 42 U.S.C. § 1983. He also asserted state-law claims. This matter is before the Court on several motions. All Defendants have moved for summary judgment. In connection with those motions, Plaintiff sought additional time to respond. Since then, Plaintiff has responded and the Court has considered Plaintiff's filings, mooting his motion. Similarly, Defendants Steven Garrett and Caleb Wesley moved for more time to reply. They filed a reply and the Court considered it, mooting their motion. Finally, Plaintiff moved to hold third-party medical personnel in contempt for failure to respond to a subpoena. For the reasons set forth below, the Court will deny that motion. Finally, the Court will grant Defendants' dispositive motions to the extent they seek judgments on Plaintiff's federal law claims. The Court declines to exercise its supplemental jurisdiction to reach the state law claims, except for the state law claims against Defendant Chase Fayne. Plaintiff has abandoned all claims against Fayne; thus, he is entitled to a summary judgment on all claims.

## BACKGROUND

This action arises from Plaintiff's arrest for public intoxication and subsequent treatment for a methamphetamine overdose. Plaintiff has admitted these facts: "Plaintiff was placed under arrest for Public Intoxication and . . . Plaintiff made it known to [defendant Caleb] Wesley [that Plaintiff] had overdosed and needed help." Second Amd. Compl. DN 88 at ¶ 16. Wesley was the

arresting officer. *Id.* at ¶ 15. Plaintiff has also admitted that at the time he suffered from "paranoid delusions." *Id.* at ¶ 21. Because he became combative, Plaintiff was ultimately sedated while undergoing overdose treatment at the Casey County Hospital (the "County Hospital").[1]

Plaintiff alleges that once he awoke from sedation, Wesley punched him and cuffed him too tightly, resulting in scarred wrists and nerve damage. Second Amd. Compl., DN 88 at ¶ 25. Plaintiff further alleges that he asked Wesley as well as defendants Ron Goodpaster and Ralph Mondie to loosen the cuffs but they refused, leaving him painfully cuffed for 10 hours. *Id.* at ¶¶ 25-26. All of these alleged events took place at the County Hospital. Plaintiff was treated there on May 10, 2022.

Defendant Daniel Lance was the treating physician at the County Hospital. During Lance's exam, he discovered a bag of methamphetamine in Plaintiff's underwear. This was one of two bags in Plaintiff's possession. The first bag came apart in Wesley's patrol car, resulting in coating Plaintiff with methamphetamine dust. Given these circumstances, and the threat to Plaintiff's safety, Lance, on his own initiative, looked to see if Plaintiff was concealing one or more additional bags in Plaintiff's rectum. 09/27/23 Lance Affidavit, DN 120-10 at ¶¶ 6, 8-10.

After being treated at the County Hospital, on May 11, 2022, Plaintiff was transferred to Lake Cumberland Regional Hospital ("Lake Cumberland"). Second Amd. Compl., DN 88 at ¶ 27. Plaintiff's admission records from the Lake Cumberland state:

> Other Skin Alterations: . . . MEPILEXES PLACED TO BIL[ATERAL] WRISTS UNDER HAND CUFFS FOR PROTECTION NO PRESSURE AREAS NOTED DRSG [DRESSING] IN PLACE TO L[EFT] HAND. PATIENT LACERATED THUMB IN FIGHT WITH POLICE PER OFFICER AT BESIDE.

05/11/2022 Admission Assessment, DN 132-1 at PageID# 1491.

---

[1] 05/10/22 ER Progress Note by Casey County Hospital, DN 119-2 at PageID# 1046 ("EMS brought him in to us very combative.").

Plaintiff has sued based solely on the alleged County Hospital events, stating that all of his injuries took place there after he was sedated. Lance conducted the rectal exam after Plaintiff was sedated. As a result, Plaintiff has sued Lance for alleged violations of his Fourth Amendment right to be free from an illegal search and seizure and for violating a federal statutory right to refuse treatment. Next, Plaintiff alleges that defendants and law officers Caleb Wesley, Ralph Mondie and Ron Goodpaster violated Plaintiff's Fourth and Eighth Amendment rights based on Wesley's allegedly cuffing Plaintiff too tightly and all three's refusals to loosen the cuffs. Plaintiff also alleges that these three defendants unlawfully detained him by preventing his leaving the County Hospital and then failed to intervene so as to protect him from Lance's rectal exam. Next, Plaintiff has sued Chief of Police for the City of Liberty Steven Garrett in his official and individual capacity, asserting a failure-to-train claim, arguing that Wesley was not adequately trained as to the appropriate use of handcuffs and appropriate methods for dealing with the mentally ill. He has also sued Wesley in his official capacity. Thus, Plaintiff has lodged claims against the City.[2] Finally, Plaintiff has pleaded claims against Casey County by suing Goodpaster and Mondie in their official capacities.

## **ANALYSIS**

Summary judgment is required "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

---

[2] Plaintiff does not support his official-capacity claim against Wesley with any factual allegations. As such, this claim will be dismissed and is not addressed herein.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record which establish the absence of a genuine issue of material fact. The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue for trial, *Celotex*, 477 U.S. at 324, by "citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). This is the non-movant's obligation. The Court does not have a duty to "search the entire record" in resolving a summary judgment motion. *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001) (citation omitted). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A "mere existence of a scintilla of evidence" is not enough to demonstrate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The fact that a plaintiff is *pro se* does not alter Rule 56 standards. The "liberal treatment of pro se pleadings does not require the lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 Fed. Appx. 338, 344 (6th Cir. 2006). As well, the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage. *Tucker v. Union of Needletrades, Indus. and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also U.S. v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the

equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### A. Claims Against Defendant Chase Fayne

Plaintiff has abandoned his claims against Fayne: "plaintiff requests all his claims to be allowed to proceed *except* as against Chase Fayne . . . ." Response, DN 126 at ¶ 56 (emphasis added). Thus, Fayne is entitled to a judgment in his favor on all claims.

### B. § 1983 Official Capacity Claims Against Goodpaster and Mondie

Plaintiff has sued Casey County Constable Mondie and Deputy Sheriff Goodpaster in their official capacities. Doing so is the same as suing Casey County – a local government. *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978). To succeed on this claim, Plaintiff must show that Casey County had a policy which resulted in his being deprived of a constitutional right. *Id.* at 690-91. A local government like Casey County cannot be, as a matter of law, liable for their employees' actions simply as a result of their employment status. *Id.* at 691. Plaintiff has not alleged that a policy or custom of Casey County caused his injury. Instead, he relies solely on the Deputy Sheriff's and Constable's employment status for his suit, limiting his allegations to the actions of these two individual employees. Thus, Plaintiff does not have § 193 claim against Casey County, and the Court will enter a judgment in the County's favor as to the official-capacity claims against Goodpaster and Mondie.

### C. § 1983 Handcuffing Claims

Plaintiff alleges that defendant Wesley cuffed him too tightly and that he along with defendants Goodpaster and Mondie refused to loosen the cuffs, resulting in Plaintiff's being painfully cuffed for approximately 10 hours during his stay at the County Hospital. Second Amd. Compl., DN 88 at ¶¶ 25-26; Pretrial Mem., DN 113 at PageID# 623 (hospital records show Plaintiff

in cuffs for "Approx. 10 hours"). Plaintiff pleaded that his wrists were "ultimately cut and scarred" and that he sustained "nerve damage." Second. Amd. Compl., DN 88 at ¶ 42; Pretrial Mem. §1(I).

Fourth-Amendment unreasonable seizure jurisprudence applies to handcuffing claims.[3] The elements of such a claim are (1) plaintiff complained that the cuffs were too tight, (2) the defendant officer ignored the complaint(s), and (3) plaintiff experienced "some physical injury" resulting from the handcuffing. *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009). Plaintiff's claim fails on the third prong. Not only do his medical records fail to support his claims of injury, those records require the opposite conclusion. Plaintiff did not sustain injuries to his wrists during his stay at the County Hospital.

Plaintiff was treated at the County Hospital on May 10, 2022 and transferred to Lake Cumberland on May 11, 2022 at 10:00 a.m. Lake Cumberland's admission records show that at the time of admission, Plaintiff's wrists were examined. 05/11/2022 Admission Assessment, Lake Cumberland Regional Hosp., DN 132-1 at PageID# 1491. The same admission record states that there were "no pressure areas" on Plaintiff's wrists. *Id.* The notes do not otherwise indicate injury, swelling, bruising, cuts or other harm to Plaintiff's wrists. Stated in full, the Notes regarding skin alterations read:

> Other skin alterations: SCATTERED BRUISING
> SCATTERED ABRASIONS
> MEPILEXES PLACED TO HEELS
> & COCCYX FOR PROTECTION
> MEPILEXES PLACED TO BIL
> ANKLES AND WRISTS UNDER
> HAND CUFFS FOR PROTECTION
> ***NO PRESSURE AREAS NOTED***
> DRSG IN PLACE TO L HAND
> PATIENT LACERATED THUMB
> IN FIGHT WITH POLICE PER

---

[3] Plaintiff also relies on the Eighth Amendment for his handcuffing claim. That Amendment does not apply because Plaintiff was not a convicted prisoner at the time. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018).

OFFICER AT BEDSIDE.

*Id.* (emphasis added).

To advance his claim, Plaintiff altered this medical record. He marked out the word "No," drew a line from the redacted language and wrote "my injury":



DN 113-1 at PageID# 629. Based on this doctored record, Plaintiff told the Court that

> in the exhibits from *Lake Cumberland* Regional Hospital Plaintiff attached to his Pretrial Memorandum was a *report* from Hospital staff *showing his injuries* and that mediplex [sic] was placed under the handcuffs to keep from *further injurying* [sic] Plaintiffs wrists.

Response at ¶ 9, DN 125 at PageID# 1356 (emphasis added). Because Plaintiff altered the record, these assertions are contrary to fact and comprise an intentional misrepresentation to the Court.

This conduct violates FED. R. CIV. P. 11, and, alone, it warrants dismissal. *Herron v. Jupiter Trans. Co.,* 858 F.2d 332, 335 (6th Cir. 1988); *Schaeffer v. Beckstrom*, CIV.A. 11-102-HRW, 2012 WL 3150019, at *1 (E.D. Ky. Aug. 2, 2012) (*pro se* plaintiff's submission of false, possibly forged medical report violated Rule 11 and warranted dismissal). Nonetheless, Plaintiff also loses on the merits. He has no evidence of a wrist injury sustained during his County Hospital stay, and he loses for this reason. *Morrison*, 583 F.3d at 401; *Celotex,* 477 U.S. at 322–23.

In addition to the forged Lake Cumberland record, Plaintiff relies on an alleged complaint he made to officials at the Pulaski County Detention Center. Response, DN 126 at ¶ 32. But

Plaintiff made this complaint after he signed out of Lake Cumberland and after his arrest by a different authority:

> Plaintiff eventually signed out of the Lake Cumberland Regional Hospital only to be arrested by the Pulaski County Deputy Sheriff on a parole violation warrant and lodged in the Pulaski County detention center on 5-12-22.

Second Amd. Compl., DN 88 at ¶ 28. These allegations undermine Plaintiff's claim. The handcuffing which allegedly cut his wrists and left him with nerve damage preceded Plaintiff's admission to Lake Cumberland. And again, Lake Cumberland's records show no injury to Plaintiff's wrists. Thus, even if the Court assumes that Plaintiff complained to Pulaski County jail personnel after his release from Lake Cumberland that evidence would not rescue his claim. It presents no more than a scintilla proof and does no more than raise a metaphysical doubt. In the absence of supporting medical records or other objective proof, no reasonable jury could find that Plaintiff's wrists were badly cut or broken. Plaintiff's alteration of his Lake Cumberland admission record supports this conclusion.

Plaintiff also pleaded claims against Wesley for excessive force based on events that happened before Plaintiff was sedated at the County Hospital. Second Amd. Compl., DN 88 at ¶ 22, ¶ 33 & ¶ 39. But in his Pretrial Memorandum, Plaintiff states that "All Plaintiff's injuries happen[ed] after he was sedated & not before." DN 113 at PageID# 619 (emphasis in original). Accordingly, the Court finds that Plaintiff abandoned his excessive-force claims to the extent they rely on conduct that preceded Plaintiff's sedation. In addition to his statement above, Plaintiff omitted these facts from his Pretrial Memorandum and made no argument about them in response to the summary judgment motions, focusing instead on the alleged unlawful handcuffing. *Conner v. Hardee's Food Sys., Inc.,* 65 F. App'x. 19 (6th Cir. 2003) (plaintiffs abandoned claim when they "failed to brief the issue before the district court"); *see also Parker v. Zale Corp.,* 864 F. Supp.2d 670, 684–85 (E.D. Tenn. 2012) (defendants entitled to summary judgment as to claims plaintiff

abandons at summary judgment stage); *Anglers of the Au Sable v. U.S. Forest Svc.,* 565 F. Supp.2d 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").

**D. § 1983 Unlawful Detention Claims**

Plaintiff alleges that Wesley "committed the offense of unlawful imprisonment" by preventing Plaintiff from leaving the County Hospital. Plaintiff also alleges that Wesley's conduct made "Plaintiff's detention unlawful and his confinement illegal." 2nd. Amd. Compl., DN 88 at ¶ 35. In his Pretrial Memorandum, Plaintiff states that Wesley "physically restrained" him to prevent him from leaving. DN 113 at § 1(E). Plaintiff further states that "he was not in custody, being placed under arrest, or under investigation so his detention was unlawful, illegal and amounts to false imprisonment." *Id.* at § 1(F). Plaintiff similarly alleges that Goodpaster, Lance and Mondie unlawfully detained him. *Id.* at §1 (E). These allegations comprise a Fourth Amendment claim for detention without a lawful arrest. Plaintiff has expressly abandoned this claim against Wesley: "Plaintiff herein states that Summary Judgment should be granted in the false arrest claim and nothing else." Response, DN 125 at ¶ 13. He likewise abandoned it against Goodpaster and Mondie for the reasons set forth in Section C of this Opinion, *infra*, failing to argue the issue in response to the motions for summary judgment.

**E. § 1983 Failure-to-Intervene Claims**

Plaintiff alleges that Mondie and Goodpaster violated his Fourth Amendment rights when they failed to prevent defendant Lance from conducting a rectal exam:

> Goodpasture and Mondie both stood idly by and watched Plaintiff have his underwear taken off him and him be anally probed by Dr. Lance without Plaintiffs [sic] consent and without a warrant to search Plaintiff.

9

Second Amd. Compl., DN 88 at ¶ 41. Plaintiff made a like allegation in his Pretrial Memorandum, adding Wesley to the claim. Defendants argue that given the record evidence, they are entitled to a judgment on this claim because Plaintiff cannot show that they had "a realistic opportunity to intervene and prevent harm."[4] Plaintiff did not respond to this argument. Instead, both of Plaintiff's response briefs focus almost exclusively on his handcuffing claim.[5] As a result, the Court finds that Plaintiff has abandoned his failure-to-intervene claims. *Conner,* 65 F. App'x. 19; *Parker,* 864 F. Supp.2d 670; *Anglers of the Au Sable,* 565 F. Supp.2d 812.

Even if Plaintiff had not abandoned these claims, they fail as a matter of law. Defendants are correct. To succeed on a failure-to-intervene theory, Plaintiff must show that there was "'a realistic opportunity to intervene and prevent harm.'" *Wells*, 538 Fed. Appx. at 640 (quoting *Ontha v. Rutherford Cnty. Tenn.*, 22 Fed. Appx. 498, 507 (6th Cir. 2007)). This standard presupposes a threshold harm. Here, the alleged threshold harm is an illegal search in violation of the Fourth Amendment. There is no allegation that any of the law-officer defendants helped Lance conduct the rectal exam. Thus, unless Lance was acting under color of law, there cannot be a Fourth Amendment violation. As explained below, the Court finds that Lance was not acting under color of law. For this reason, Plaintiff's failure-to-intervene claims fail. *Bonner-Turner v. City of Ecorse*, 627 Fed. Appx. 400, 413 (6th Cir. 2015) ("because there is no underlying constitutional violation, [officer] may not be liable for failure to intervene.").[6]

---

[4] *Wells v. City of Dearborn Heights*, 538 Fed. Appx. 631, 640 (6th Cir. 2013).
[5] Plaintiff reasserts the general allegation in his Response to Wesley's motion, but does nothing more. *See* Response, DN 125 at ¶ 25.
[6] Nor would the failure-to-protect doctrine established by *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989) apply. First, Plaintiff did not plead or argue that his substantive due process rights were violated. Second, a defendant's mere awareness of potential danger is not sufficient to create a constitutional duty. *Id.* Here, nothing shows that these defendants witnessed the rectal exam or were at all aware that Plaintiff was at-risk of being subjected to one. Accordingly, even if Plaintiff had pleaded a substantive due process claim, the Court would dismiss.

**F. § 1983 Illegal-Search Claim**

Plaintiff alleges that defendant "Lance was acting as an agent of the state when he anally probed Plaintiff without consent which is an illegal search and an assault and battery." Pretrial Mem., DN 113 at PageID# 622; *see also* Second Amd. Compl., DN 88 at ¶ 45. To succeed on this claim, Plaintiff must prove that Lance conducted a rectal exam at the behest of the state or that he had some contractual arrangement for treating people in the state's custody. *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (anyone whose conduct is "fairly attributable to the state" is a state actor); *Phillips v. Tangilag*, 14 F.4th 524, 533 (6th Cir. 2021) (doctors who treat prisoners are not automatically state actors; lack of contract between doctor and state is dispositive).

Based on these principles, in *Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009), the Court found that a doctor was not a state actor because (a) he did not have a contract with the state and (b) there was no evidence that state influenced the doctor's care. 577 F.3d at 649. Absent such evidence, the doctor's conduct was not fairly attributable to the state and he could not have been said to be acting under color of state law. *Id. See also Styles v. McGinnis*, 28 F. Appx. 372, 374 (6th Cir. 2001) (absent contract with state, emergency room doctor who performed rectal exam was not state actor).

This case is similar to *Scott*. Lance has testified, via affidavit, that he is "a privately employed emergency room physician" and does not have "a contract or agreement with any correctional facility, police department, or government entity for the provision of medical treatment to pretrial detainees or prisoners." Lance Affidavit at DN 120-10 at ¶¶ 3-4. Plaintiff has not controverted this proof. Further, Plaintiff was taken to the County Hospital at Plaintiff's request for help and as the result of a 911 call, not as the result of a direct referral and not for the purpose of seeking Lance's care in particular. Finally, there is no record evidence to the effect that any of

11

the officers involved influenced Lance's treatment or asked him to conduct a rectal exam for police purposes. Rather, Lance testified as follows:

> On the date in question, none of the police officers present at the hospital, including Officer Caleb Wesley, Constable Ralph Mondie, or Deputy Ron Goodpast[er], directed me to render any specific medical treatment to Mr. Harris. In addition, I was not aiding the officers in their investigation, but was performing emergent medical care.

Lance Affidavit, DN 120-10 at ¶ 17. Plaintiff has not controverted this testimony.

Nonetheless, Plaintiff argues that his case is like *U.S. v. Booker*, 728 F.3d 535 (6th Cir. 2013). Response, DN 126 at ¶¶ 38-19. To the contrary, the facts in *Booker* are not like the facts in this case. For this reason, the *Booker* case does not help Plaintiff. In *Booker*, police took the plaintiff to the hospital for the purpose of creating a case against him through a rectal search for hidden drugs: "Police officers, reasonably suspecting Booker had contraband hidden in his rectum, took Booker to an emergency-room doctor." 728 F.3d at 537. The police needed more evidence to justify an arrest because their searches, including a strip search, had come up empty. *Id.* at 537-38. Dr. Michael LaPaglia did a rectal exam and uncovered more drugs. Notably, "this was the third time" that the sheriff's department asked Dr. LaPaglia to perform a rectal exam for the purpose of helping police make their case. *Id.* at 538. As well, Booker "had no physical symptoms and had normal vital signs." Despite any indication that Booker's well-being was at risk, Dr. LaPaglia proceeded. *Id.* Such circumstances do not exist in the instant case.

Instead, Plaintiff instigated his trip to the hospital by telling officer Wesley that he had overdosed on methamphetamine and needed help: "Plaintiff was placed under arrest for Public Intoxication and . . . Plaintiff made it known to [defendant Caleb] Wesley [that Plaintiff] had overdosed and needed help." Second Amd. Compl., DN 88 at ¶ 16. Plaintiff also admits he was symptomatic: "Harris was having paranoid delusions." *Id.* at ¶ 21. The medical records say the same thing. 05/11/2022 ER Progress Notes (methamphetamine intoxication, sever agitation,

paranoid delusion, continued agitation followed by sedation), DN 120-5 at PageID# 1124. EMS took Plaintiff to the hospital, and in light of Plaintiff's having already overdosed, when Lance found a baggie of drugs in Plaintiff's underwear, he conducted a rectal exam to prevent Plaintiff's possible death. Lance Affidavit, DN 120-10 at ¶¶ 10-11. This evidence is the opposite of what happened in *Booker*. Here, there simply is no "sufficiently close nexus to make [Lance's] conduct attributable to the police." *Booker*, 728 F.3d at 540. Lance was a private actor. The Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual . . . ." *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984). Thus, Plaintiff's illegal search claim against Lance fails as a matter of law.

### G. EMTA Claims

Plaintiff alleges that Lance violated 42 U.S.C. §§ 1395a and 1395dd(b)(1), statutes within the Emergency Medical Treatment Act (the "EMTA"). *Id.* at ¶¶ 44, 51. Specifically, Plaintiff contends that these EMTA statutes gave him the right to refuse medical treatment, that he refused treatment, and Lance treated him anyway in violation of these federal laws. *Id.* The EMTA, however, does not create a private right of action against individuals. *Moses v. Providence Hosp. and Medical Centers, Inc.*, 561 F.3d 573, 587 (6th Cir. 2009); *Home Health Servs., Inc. v. Currie*, 706 F.2d 497, 498 (4th Cir. 1983). Thus, Plaintiff does not have an EMTA claim against Lance.

### H. § 1983 Failure-to-Train Claims

Plaintiff alleges that "the city of Liberty and Steven Garrett . . . failed to properly train . . . Wesley in dealing with mentally ill people in overdose situations, and proper handcuffing procedures to ensure no injuries to a person." Pretrial Mem., DN 113 at § 2(A). As factual support for this allegation, Plaintiff relies on alleged failure-to-discipline incidents wholly unrelated to mentally ill people or handcuffing incidents. *Id.* at § 2(B); *see also* Second Amd. Compl., DN 88

at ¶ 39. Further, Plaintiff pleaded these claims based on the Kentucky Constitution, not on the United States Constitution. *Id.* Thus, there is no § 1983 failure-to-train claim before this Court.

However, even if Plaintiff had stated a § 1983 claim, it would fail on the merits. His claim rests entirely on the allegation that Wesley was not adequately trained. Pretrial Mem., DN 113 at § 2(A); *see also* Second Amd. Compl., DN 88 at ¶ 39; Response, DN 125 at ¶ 32. The City of Liberty cannot be held liable on this ground: "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton* v. *Harris*, 489 U.S. 378, 390-91 (1989). Plaintiff's failure-to-train claim fails for this reason.

Finally, to the extent Plaintiff has sued Garrett because he is the Chief of Police and presumably supervises training, the claim likewise fails. Supervisory status alone is not a viable ground for § 1983 liability. *Doe v. Roseville*, 296 F.3d 431, 440 (6th Cir. 2002).

### I. Plaintiff's State-Law Claims

Having dismissed Plaintiff's federal claims, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state-law claims against defendants other than Fayne. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if court has dismissed all claims over which it has original jurisdiction); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022) (federal court that has dismissed federal-law claims should not ordinarily reach state-law claims). Accordingly, all state-law claims brought by Plaintiff against defendants other than Fayne will be dismissed without prejudice.

### J. The Remaining Pending Motions

The motions for extensions time (**DN 124 and DN 127**) are hereby **DENIED** as moot.

Plaintiff's motion to hold medical personnel in contempt **(DN 112)** is **DENIED**. Plaintiff argues that despite a subpoena, he has not received copies of electronically stored sick calls and responses thereto from the Pulaski County Jail. Plaintiff does not assert how these records would bear on his case. Plaintiff also complains that jail personnel denied his request that they take photos of his allegedly injured wrists. But, as noted above, there is no record to suggest that Plaintiff's wrists were injured during his stay at the County Hospital. Instead, Plaintiff falsified his medical records from Lake Cumberland in a failed attempt to raise a question of fact. The actual record shows that his wrists were not injured. Because there is no reason to conclude that additional records would bear on Plaintiff's case, the Court finds no merit in Plaintiff's Motion to Hold Medical Personnel at Pulaski County Jail in Contempt **(DN 112)**; the motion is **DENIED**.

## CONCLUSION

For the reasons stated above, the Court will enter a separate, final order and judgment in accordance with this Opinion.

March 8, 2024

Charles R. Simpson III, Senior Judge
United States District Court